OPINION OF THE COURT
John M. Leventhal, J.
This court sentenced defendant to a one-year conditional discharge for the conviction of criminal contempt in the second degree. As a condition of the conditional discharge and the order of protection issued, defendant agreed to the provision prohibiting him from entering New York City for three years unless he made an application to the court. This decision explains why the court rejected defense counsel’s argument that the imposed condition unlawfully impinged on the defendant’s constitutional right to travel.
Procedural History
On March 15, 2005, the defendant, Richard Coleman, entered a plea of guilty to criminal contempt in the first degree and criminal contempt in the second degree. The defendant was a Pennsylvania resident and expressed his desire to the court that he did not want to be placed on probation in New York.[1] The court agreed to dismiss the felony count of criminal contempt in the first degree and release defendant on a conditional discharge if he were successful in completing a 32-week batterer intervention program.[2] In that event, the court was willing to give defendant a conditional discharge along with an order of protec *1021 tion only because he agreed to stay out of New York City. As there was no monitoring of the defendant, this provision also had the salutary effect of promoting the victim’s safety. Defendant agreed not to enter New York City for three years as a special condition of both the protective order and conditional discharge.[3]
On January 18, 2006, it was reported to the court that defendant completed a batterer intervention program outside of Pittsburgh. Defendant’s motion to withdraw the plea of guilty to criminal contempt in the first degree was granted. The court sentenced defendant to a one-year conditional discharge for criminal contempt in the second degree and issued an order of protection. Defendant was ordered to stay away from New York City as a condition of both the order of protection and conditional discharge. Despite defendant’s consent, defense counsel objected to the imposition of these restrictions at sentencing claiming that this condition was unconstitutional.
Analysis
Defendant’s Right to Travel
The right to travel is a basic civil liberty that goes as far back as the Articles of Confederation whereby “the people of each State shall have free ingress and regress to and from any other State” (United States v Guest, 383 US 745, 758 [1966]). Presently, the right to travel is not specifically stated in our Constitution, but it is an undisputed fundamental right derived from various clauses within the Constitution and has been repeatedly affirmed by case history as a basic civil liberty of all citizens (Guest, 383 US at 757-759; see also Passenger Cases, 7 How [48 US] 283, 492 [1849]).
An individual’s right to travel, although fundamental, is not absolute. A state has a valid interest in limiting the rights of those persons who are convicted of a crime (Jones v Helms, 452 US 412, 419 [1981]), and indeed, a person’s right to travel can be severely limited due to incarceration (Meachum v Fano, 427 US 215, 224 [1976]). The purpose of such restriction on a convicted person’s right to travel is to protect the community and to rehabilitate the defendant (Griffin v Wisconsin, 483 US 868, 874-875 [1987]). In the matter sub judice, the defendant, being convicted of a crime, does not possess an absolute right to travel.
*1022 Conditional Discharge
Penal Law § 65.10 (1) authorizes the court to impose a variety of conditions in a conditional discharge “reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so” even if that includes limiting the defendant’s mobility. According to Penal Law § 65.10 (2) (b) and (Z), the court can require the defendant to stay away from “disreputable places,” participate in treatment programs, and “satisfy any other conditions reasonably related to his rehabilitation.” Although, the list of various conditions under section 65.10 (2) is not exhaustive, any court-imposed condition must be “fundamentally rehabilitative” in nature (People v Hale, 93 NY2d 454, 461 [1999]; People v McNair, 87 NY2d 772, 774 [1996]; People v Letterlough, 86 NY2d 259, 265 [1995]).
Assuming arguendo that the travel restriction is a proper condition of the order of protection, then it would also be a valid requirement of the conditional discharge as it would help defendant lead a “law-abiding life.” For defendant to lead a “law-abiding life,” he must not violate the order of protection. Therefore, this court determined that the defendant should stay out of New York City barring an emergency. This proscription helps defendant to adhere to the order of protection and lead a “law-abiding life.”
The condition is also “fundamentally rehabilitative” because the crime occurred in Kings County and the area that defendant is not allowed to enter is reasonably related to the area where the offense occurred. The victim may easily change jobs or residence to any of the five boroughs and travel extensively within New York City on a daily basis. It is reasonable for the court to alleviate the victim’s fear of being confronted by the defendant by preventing the defendant’s presence in New York City especially since the court was not monitoring the defendant due to his financial hardship. The court also permitted defendant to enter New York City as long as he made an application to the court in cases of emergency. Therefore, this court “individually tailored” defendant’s restriction on travel to ensure that he will be “law-abiding” and to assist defendant in his rehabilitation (Hale, 93 NY2d at 462) while taking into account defendant’s concerns and also providing for the victim’s safety.
Order of Protection
An order of protection is for the benefit of the victim and not a form of punishment for the crime (People v Nieves, 2 NY3d *1023 310, 315 [2004]). The primary intent of Criminal Procedure Law § 530.13 is to protect victims and to encourage their cooperation with law enforcement (Nieves, 2 NY3d at 316). Criminal Procedure Law § 530.13 (1) provides that a court may require a defendant to “stay away” from the victim and “refrain from harassing . . . such victim,” in addition to “any other conditions” (emphasis added). The court’s interpretation of this statute is that any “additional” condition should reasonably relate to the protection of the victim.
In this case, the victim should have the freedom to travel wherever she wants in New York City and the court designed a condition to protect the victim.[4] In light of defendant’s prior conduct in violating several orders of protection, this court made the restriction on defendant’s travel as a specific condition of his protective order to be certain that there is no contact between the defendant and the victim. Under Criminal Procedure Law § 530.13 (1), the court’s mandate was a proper “additional” condition in the order of protection until its expiration on January 17, 2009.[5] Penal Law § 65.10 (2) (k) also provides that the court may require the defendant to “[o]bserve certain specified conditions of conduct as set forth in an order of protection.” Therefore, even though the conditional discharge is only for one year, the court may require the defendant to stay away from New York City for three years as a valid condition of the order of protection.
Defendant’s Consent
While defendant’s consent is not determinative, defendant agreed to the conditions of the conditional discharge and protective order, and received the benefit of the bargain. The defendant received a nonfelony conviction and was not sentenced to probation. Defendant should not receive all the benefits of the bargain, without the People receiving any benefit in exchange. “Having received the benefit of his bargain, defendant should *1024 be bound by its terms” (People v Felman, 141 AD2d 889, 890 [1988]). Defendant’s consent merely provides another reason why the travel restriction is permissible.
Defendant was aware that the restriction was the result of a negotiation for a minimal sentence. Defendant resides in the western part of Pennsylvania outside of Pittsburgh and he stated on the record that he had no need to come into New York City. This case is analogous to the defendant in People v Hale, who agreed to the restriction of his Fourth Amendment right against unreasonable searches and seizures (Hale, 93 NY2d at 454) by permitting his probation officer to search his home, person and vehicle for illegal narcotics as a negotiated condition of his probation. The Hale court held that defendant’s consent had the following effect: “In the case before us the search was not conducted pursuant to a State regulation but under a provision which, we hold, carries as much if not more constitutional weight: a court-ordered probationary condition, based on a negotiated sentence, and the written, counseled consent of the probationer” (Hale, 93 NY2d at 460).
In this case, regardless of the defendant’s consent, the court had the statutory authority to impose a three-year restriction on defendant’s travel to New York City so that he would not violate the order of protection. Parenthetically, the restriction on defendant’s travel for a one-year period was also valid as a requirement of his conditional discharge. This condition was in exchange for defendant’s nonfelony conviction and nonprobationary sentence.[6] Defendant’s consent merely strengthens the *1025 lawfulness of the travel restriction as this condition was a direct result of an agreement between the defendant and the People. This court notes that it would not have felt comfortable in approving this disposition if the travel restriction were not to be imposed upon the defendant.[7]
Conclusion
For the foregoing, the travel restriction imposed on defendant as a special condition of the conditional discharge and order of protection was lawful.

. Defendant resided near Pittsburgh and noted on the record that he had no reason to go to New York City. It was a financial hardship for him to be placed on probation in New York even for a short time prior to any possible transfer of his probation to Pennsylvania. The defendant was excused by the court for his nonappearance on several occasions when he lacked sufficient funds to purchase a bus ticket to New York.

. Since the inception of the Domestic Violence Felony Court in 1996, a batterer intervention program was never meted out as a free-standing sentence even though it may have been imposed as a monitoring tool for a condition of bail, probation or parole. The court notes that the research, most recently confirmed by the Center for Court Innovation, demonstrates that attendance at a batterer intervention program does not lower rates of abuse (Perrotta, Many in Domestic Violence Community Question Batterer Intervention Programs, NYU, Feb. 23, 2006, at 1, col 3). By permitting defendant to attend a 32-week program, the court was using the batterer intervention program as a monitoring mechanism while the case was pending as there was no other way to supervise the defendant in Pennsylvania from New York City.

. The conditional discharge restriction was valid for only one year (Penal Law § 65.05 [3]).

. Defendant’s right to travel cannot be used to interfere with the victim’s right to be free from “invasive, oppressive and harmful behavior” (see, Spence v Kaminski, 102 Wash App 1050 [unreported decision; text at 2000 WL 1476163, *5, 2000 Wash App LEXIS 2722, *16 (Div 3 2000)]). The order of protection does not impair the defendant’s constitutional right to travel, instead it is a “reasonable exercise of police power requiring one person’s freedom of movement to give way to another person’s freedom not to be disturbed” (id.).

. The court has the statutory authority to impose a three-year order of protection for a conviction of a misdemeanor from the date of sentencing (CPL 530.13 [4]).

. The court notes that if the defendant were to have been placed on probation, such a restriction on travel would have been appropriate. New York courts have not addressed this issue, but other jurisdictions discuss the merits of geographic restrictions as a permissible condition of probation when it is reasonably related to the purposes of probation, which is to protect the public and to rehabilitate the defendant (see, United States v Cothran, 855 F2d 749 [11th Cir 1988]). Overly broad geographic restrictions were struck down only when they prevented the probationer from entering places where he lived or worked (see, e.g., Edison v State, 709 P2d 510 [Alaska App 1985]; Johnson v State, 672 SW2d 621 [Tex App 1984]). Courts have held that the banishment of a probationer from an entire county or state may be overly broad only where there is an “insufficient nexus” between the geographic restriction and victim safety or prevention of recidivism (see, e.g., State v Franklin, 604 NW2d 79, 84 [Minn 2000] [insufficient nexus between defendant’s exclusion from the city of Minneapolis and “preservation of public safety”]; People v Brockelman, 933 P2d 1315, 1319-1320 [Colo 1997] [banishing defendant from the two towns where the victim lived and worked was appropriate]; McCreary v State, *1025 582 So 2d 425 [Miss 1991] [exclusion from the entire state of Mississippi voids public policy because it does not serve any rehabilitative purpose or public safety]; State v Ferre, 84 Or App 459, 734 P2d 888 [1987] [banishing defendant from the entire county was overly broad, but excluding defendant from the town where the victim lived would have been a more reasonable restriction]). Here there is a sufficient nexus between the geographic restriction and victim safety as well as recidivism. A banishment was held not to be overly broad, where a Wisconsin court excluded defendant from the entire county of Walworth after she had harassed a family for several years and repeatedly violated protective orders (Predick v O’Connor, 260 Wis 2d 323, 660 NW2d 1 [2003]). The court notes that Walworth County is 555 square miles and almost twice the area of New York City. Similarly in this case, placing a geographic restriction to protect the victim’s safety would have been appropriate as a condition of probation because defendant does not work or five in New York City and the incident occurred in New York City.

. The court has no other means of monitoring the defendant and has no other mechanism for ensuring the victim’s safety under these circumstances.